UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SHAWN PAUL SMITH,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

No. 1:18-cv-01614-GSA

**ORDER FOR REMAND PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)**

## I.    <u>Introduction</u>

Plaintiff Shawn Paul Smith ("Plaintiff") seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying his application for supplemental security income pursuant to Title XVI of the Social Security Act.  The matter is currently before the Court on the parties' briefs which were submitted without oral argument to the Honorable Gary S. Austin, United States Magistrate Judge.[1]  *See* Docs. 22, 23 and 26.  Having reviewed the record as a whole, the Court finds that the ALJ's decision was not based on substantial evidence. Accordingly, the case is remanded for further proceedings in accordance with this opinion.

///

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge.  *See* Docs. 6 and 9.

## II.   Procedural Background

On August 3, 2015, Plaintiff filed an application for supplemental security income alleging disability beginning January 1, 2011.[2]  AR 24.  The Commissioner denied the application initially on December 7, 2015, and following reconsideration on March 2, 2016.  AR 24.

On March 7, 2016, Plaintiff filed a request for a hearing.  AR 24.  Administrative Law Judge Sharon Madsen presided over administrative hearings on November 21, 2017. AR 39-59. Plaintiff appeared and was represented by an attorney.  AR 39.  On February 28, 2018, the ALJ denied Plaintiff's application.  AR 24-33.

The Appeals Council denied review on September 21, 2018.  AR 10-13.  On November 26, 2018,  Plaintiff filed a complaint in this Court.  Doc. 1.

## III.   Factual Background

### A.   Plaintiff's Testimony

Plaintiff (born January 1969) lived with his daughter and grandchildren.  AR 42-43.  He was able to perform his own personal care but did no household chores other than keeping his own room clean.  AR 44.  Plaintiff was able to heat food in the microwave.  AR 44.  He did no shopping and did not participate in any social activities.  AR 44.  Plaintiff spent his days napping and watching television.  AR 45.  He had been clean and sober for over four years.  AR 47.

Plaintiff attended school through the eleventh grade.  AR 43.  He did not have a driver's license.  AR 43.

Plaintiff heard voices and "s[aw] things in the corners of [his] eyes."  AR 45.  He had anger issues.  AR 45-46.  Anxiety and pressure triggered angry outbursts.  AR 46.  He had difficulty paying attention.  AR 46.  He continued to have problems with suicidal ideation.  AR 48.  Riding in a car and shopping made him paranoid.  AR 49, 50.

Treatment consisted of medication, which was of little help.  AR 46, 47.  He was not participating in group therapy because he did not get along with other group members.  AR 46.

---

[2] A prior application was denied.  Although Plaintiff requested an administrative hearing he failed to appear and ALJ Sharon Madsen dismissed the hearing request on July 23, 2012.  *See* AR 55-59, 60-64,  The Appeals Council denied review on January 30, 2013.  AR 65-66.

1          **B.      Medical Records[3]**

2          In October 2014, Plaintiff arrived at the Wasco State Prison Reception Center (WSP) to

3   serve a three-year prison term for assault with force to cause great bodily injury.  AR 274.  He

4   had an extensive criminal history, and this was his second prison term.  AR 274.  Plaintiff had

5   attempted suicide twice, most recently in 2008 by jumping from the second tier of the county jail.

6   AR 274.  Plaintiff had also attempted suicide by hanging in 2005.  AR 503.  Plaintiff had no

7   history of mental health treatment when not incarcerated.  AR 274.  He had a history of drug use

8   since age 15, using marijuana, alcohol and methamphetamine.  AR 274.

9          The record includes monthly mental health treatment plans at WSP from November 2014

10  through June 2015.  AR 263-76, 294-304, 308-443, 458.  Plaintiff's mental health problems

11  included mood swings, depression and anxiety.  AR 274.  A December 2014 report noted that

12  Plaintiff was sad and experiencing more frequent auditory hallucinations (advocating suicide),

13  perhaps because of the absence of family contact and by anxiety induced by a cellmate who

14  teased about beating and raping Plaintiff.  AR 316.

15         On December 22, 2014, Plaintiff was admitted to a crisis bed at the California Health Care

16  Facility with a diagnosis of major depressive disorder and suicidal ideation with plan (razor

17  blade).  AR 487, 490, 503.  On arrival, Plaintiff complained of increased depression; missing his

18  family, especially at the holidays; and visual and auditory hallucinations.  AR 498.  Plaintiff

19  responded well to medications.  AR 544.  On December 30, 2014, P. Smith, Ph.D., discharged

20  Plaintiff to WSP with referral to the EOP program.[4]  AR 490, 543.  Plaintiff returned to WSP on

21  January 2, 2015.  AR 500.

22         Upon his return to WSP, Plaintiff participated in EOP.  AR 207, 541.  The EOP program

23  included weekly group sessions, daily rounds with a licensed psychiatric technician and weekly

24  individual sessions with the psychiatric counselor.  AR 339.  Therapy addressed decision making,

25  impulse control, anger management, development of supportive daily routine, relaxation skills,

26

27  _____
    [3] Additional medical records from correctional facilities are include in the record at AR 666-850.
    [4] In 2013, the California Department of Corrections and Rehabilitation introduced enhanced outpatient mental health
28  treatment (EOP) for selected inmates.  cdcr.ca..gov/news/2013/02/14/cdcr-unveils-newest-investment-in-prison--
    mental-health-care/ (accessed April 24, 2020).

education concerning psychiatric medications, and education and development of positive coping skills.  AR 339.

In January 2015, Plaintiff's social worker noted his compliance with medications, which seemed to be working.  AR 314.  In March 2015, Plaintiff's social worker noted that Plaintiff was having difficulty controlling his anger and had received four RVRs, including one for battery of another inmate.  AR 298.

Plaintiff arrived at Valley State Prison (VSP) in June 2015.  AR 277.  The record includes monthly mental health treatment plans at VSP from June 2015 through Plaintiff's parole in September 2015.[5]  AR 277-91, 305-07, 457.  Plaintiff's monthly mental health treatment plan for June 2015 included a referral to psychiatry for consideration of medication to address frequent auditory and visual hallucinations.  AR 277. Plaintiff's social worker also noted that Plaintiff was motivated to get better, attended 80 percent of the programs offered to him, and remained free of disciplinary actions and "in control of his emotions especially anger."  AR 287.  Plaintiff's diagnosis was Depressive Disorder NOS, Anxiety Disorder NOS, Polysubstance Dependence in a Controlled Environment (DOC-Meth), Dysthymic Disorder, Psychotic Disorder NOS and Bipolar Disorder (by self-report).  AR 278, 473.  His GAF was 45.[6]  AR 278, 473.  In September 2015, Plaintiff felt positive about a new medication, finding that it improved his interpersonal interactions.  AR 471.

Following his parole, Plaintiff spent approximately three months in a sober living facility before moving in with his daughter and her family.  AR 627.  Plaintiff received supervision and medication management through parole services.  AR 627-65. In December 2015, Lynn Smith, L.C.S.W., recommended Plaintiff for permanent general relief benefits noting that Plaintiff's ability to work was limited by panic attacks, low concentration and low memory.  AR 600-01.

///

///

[5] Plaintiff applied for supplemental security income in preparation for his parole from prison.
[6] The Global Assessment of Functioning (GAF) scale is a rating from 0 to 100 and considers psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness. *Diagnostic and Statistical Manual of Mental Disorders*, 32-35 (4th ed. American Psychiatric Association 1994). A GAF of 41-50 corresponds to serious symptoms or a serious impairment in social, occupational, or school functioning. *Id.*

1   After moving in with his daughter's family, Plaintiff reported experiencing anxiety and frequent

2   panic attacks in crowded areas.[7]  AR 636, 640, 642, 643

3       Beginning in January 2016, following his discharge from parole, Plaintiff received

4   psychiatric management from the Fresno County Department of Mental Health.  AR 603-17.

5   Plaintiff participated in recovery groups.  AR 610.  .  In February 2016, Plaintiff reported that he

6   had begun staying home when the family went shopping or out to eat at a crowded restaurant.

7   AR 644.  In May 2016, despite excellent medication compliance, Plaintiff experienced worsening

8   symptoms.  AR 639, 643.

9       In February 2017, Plaintiff discontinued Effexor, an antidepressant, after a fall that he

10  attributed to the medication.  AR 607.  After doing well without it Plaintiff concluded that he did

11  not require an antidepressant. AR 607.

12      In August 2017, Theresa Vincent, N.P., noted that without any discussion, Plaintiff had

13  left paperwork for an opinion that his mental health condition precluded employment.  AR 604.

14  Noting that she would not complete the form, Ms. Vincent wrote, "[T]his prescriber does not see

15  a mental health reason for him to not seek work, albeit am not very familiar with him due to no

16  show and brief time of treatment."  AR 604.  She added, "[H]e appears capable of working and I

17  am not familiar with him to legally be able to answer any of the requested information."  AR 604.

18      **IV.    Standard of Review**

19      Pursuant to 42 U.S.C. §405(g), this court has the authority to review a decision by the

20  Commissioner denying a claimant disability benefits.  "This court may set aside the

21  Commissioner's denial of disability insurance benefits when the ALJ's findings are based on

22  legal error or are not supported by substantial evidence in the record as a whole."  *Tackett v.*

23  *Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999) (citations omitted).  Substantial evidence is evidence

24  within the record that could lead a reasonable mind to accept a conclusion regarding disability

25  status.  *See Richardson v. Perales*, 402 U.S. 389, 401 (1971).  It is more than a scintilla, but less

26  than a preponderance.  *See Saelee v. Chater*, 94 F.3d 520, 522 (9th Cir. 1996) (internal citation

27

28
[7] Plaintiff's panic attacks were based, in part, on threats of retribution from his former gang.  AR 637.  Plaintiff's former gang affiliation was readily apparent from multiple visible gang tattoos, including facial tattoos.

5

1  omitted).  When performing this analysis, the court must "consider the entire record as a whole

2  and may not affirm simply by isolating a specific quantum of supporting evidence."  *Robbins v.*

3  *Social Security Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citations and internal quotation marks

4  omitted).

5        If the evidence reasonably could support two conclusions, the court "may not substitute its

6  judgment for that of the Commissioner" and must affirm the decision.  *Jamerson v. Chater*, 112

7  F.3d 1064, 1066 (9th Cir. 1997) (citation omitted).  "[T]he court will not reverse an ALJ's

8  decision for harmless error, which exists when it is clear from the record that the ALJ's error was

9  inconsequential to the ultimate nondisability determination."  *Tommasetti v. Astrue*, 533 F.3d

10  1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

11      **V.**      **The Disability Standard**

12
13  > To qualify for benefits under the Social Security Act, a plaintiff must
establish that he or she is unable to engage in substantial gainful
14  > activity due to a medically determinable physical or mental
impairment that has lasted or can be expected to last for a continuous
15  > period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A).
An individual shall be considered to have a disability only if . . . his
16  > physical or mental impairment or impairments are of such severity
that he is not only unable to do his previous work, but cannot,
17  > considering his age, education, and work experience, engage in any
other kind of substantial gainful work which exists in the national
18  > economy, regardless of whether such work exists in the immediate
area in which he lives, or whether a specific job vacancy exists for
him, or whether he would be hired if he applied for work.

19      42 U.S.C. §1382c(a)(3)(B).

20        To achieve uniformity in the decision-making process, the Commissioner has established

21  a sequential five-step process for evaluating a claimant's alleged disability.  20 C.F.R. §

22  416.920(a)-(f).  The ALJ proceeds through the steps and stops upon reaching a dispositive finding

23  that the claimant is or is not disabled.  20 C.F.R. §§ 416.927, 416.929.

24        Specifically, the ALJ is required to determine: (1) whether a claimant engaged in

25  substantial gainful activity during the period of alleged disability, (2) whether the claimant had

26  medically determinable "severe impairments," (3) whether these impairments meet or are

27  medically equivalent to one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P,

28  Appendix 1, (4) whether the claimant retained the residual functional capacity ("RFC") to

1    perform his past relevant work, and (5) whether the claimant had the ability to perform other jobs

2    existing in significant numbers at the national and regional level.  20 C.F.R. § 416.920(a)-(f).

3    **VI.     Summary of the ALJ's Decision**

4         The ALJ found that Plaintiff had not engaged in substantial gainful activity since the

5    application date of August 3, 2015.  AR 26.  His severe impairments included: schizoaffective

6    disorder, anxiety disorder, bipolar II disorder, cannabis abuse, and a history of methamphetamine

7    and heroin abuse in remission.  AR 26.  None of the severe impairments met or medically equaled

8    one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§

9    416.920(d), 416.925 and 416.926).  AR 27.

10        The ALJ concluded that Plaintiff had the residual functional capacity to perform a full

11   range of work at all exertional levels.  AR 28.  He was able to perform simple routine tasks with

12   occasional contact with the public, and to occasionally work with coworkers and supervisors in

13   the same building but not side by side.  AR 28.

14        Plaintiff had no past relevant work.  AR 31.  Considering his age, education, work

15   experience and residual functional capacity, jobs that Plaintiff could perform were available in

16   significant numbers in the national economy.  AR 32.  Accordingly, the ALJ found that Plaintiff

17   was not disabled at any time from August 3, 2015, the application date, through February 28,

18   2018, the date of the decision.  AR 33.

19   **VII.    Multiple Errors Require Reversal and Remand of the Residual Functional
         Capacity Analysis**

20

21        Plaintiff contends that two errors mar the residual functional capacity analysis set forth in

22   the hearing decision: (1) the failure to consider the record as a whole, and (2) the failure to set

23   forth specific and legitimate reasons for rejecting the opinion of consultative psychiatrist Ekram

24   Michiel, M.D.  The Commissioner responds that residual functional capacity analysis was legally

25   sound and based on the record as a whole.  Having reviewed the record and the ALJ's analysis,

26   the Court agrees with Plaintiff that errors in the analysis require reversal and remand.  However,

27   the Court's reasoning in reaching its conclusion is not fully consistent with the Plaintiff's

28   contentions.

In applying the standards of review, the Court acknowledges that the Commissioner's limitations of personnel and budget sometimes result in imperfect but still acceptable determinations of disability benefit applications.  Such minor errors generally fall within the broad deference that a district court provides to the expertise of a federal agency.  The incomplete and selective analysis of the record in this case does not reach the level at which it can be affirmed as a matter of agency deference.  First, the analysis of the medical and mental health records is inadequate and suggests that the author of the opinion selected those portions of the evidence supportive of a finding that Plaintiff was not disabled.  Second, the perfunctory review of Dr. Michiel's opinion resulted in the author's overlooking a significant and substantive error.  Ultimately, the Court must reject the residual functional capacity determination for lack of compliance with applicable law and insufficient support from the record as a whole.

### A.      Determining Residual Functional Capacity

"Residual functional capacity is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p.  The residual functional capacity assessment considers only functional limitations and restrictions which result from an individual's medically determinable impairment or combination of impairments.  SSR 96-8p.

A determination of residual functional capacity is not a medical opinion, but a legal decision that is expressly reserved for the Commissioner. See 20 C.F.R. §§ 404.1527(d)(2) (RFC is not a medical opinion), 404.1546(c) (identifying the ALJ as responsible for determining RFC). "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." *Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001).  In doing so the ALJ must determine credibility, resolve conflicts in medical testimony and resolve evidentiary ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  He or she properly determines the weight to be given each medical opinion by considering the evidence in the record as a whole.  20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a

1   whole, the more weight we will give to that opinion").  The record must include objective

2   evidence to support the medical opinion of the claimant's residual functional capacity.  *Meanel v.*

3   *Apfel*, 172 F.3d 1111, 1113-14 (9th Cir. 1999).

4          The opinions of treating physicians, examining physicians, and non-examining physicians

5   are entitled to varying weight in residual functional capacity determinations. *Lester v. Chater*, 81

6   F.3d 821, 830 (9th Cir. 1995).  Ordinarily, more weight is given to the opinion of a treating

7   professional, who has a greater opportunity to know and observe the patient as an individual.  *Id.*;

8   *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996).  The opinion of an examining physician is,

9   in turn, entitled to greater weight than the opinion of a non-examining physician. *Pitzer v.*

10  *Sullivan*, 908 F.2d 502, 506 (9th Cir. 1990).  An ALJ may reject an uncontradicted opinion of a

11  treating or examining medical professional only for "clear and convincing" reasons.  *Lester*, 81

12  F.3d at 831.

13         Nurse practitioners such as Ms. Vincent are not evaluated as if they were physicians.  A

14  nurse practitioner is not considered an acceptable medical source under 20 C.F.R. § 416.913.[8]

15  Instead, nurse practitioners are considered to be other sources.  20 C.F.R. § 416.913(d)(1) (listing

16  medical sources that are considered other sources, including nurse practitioners, physicians'

17  assistants, naturopaths, chiropractors, audiologists, and therapists).  Unlike the opinions of

18  physicians, the opinions of nurse practitioners are not entitled to special weight.  An ALJ may

19  reject the opinions of other sources by giving "reasons germane to each witness for doing so."

20  *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012); *Turner v. Comm'r of Soc. Sec. Admin.*, 613

21  F.3d 1217, 1224 (9th Cir. 2010).  Factors used to evaluate a nurse practitioner's opinion include:

22  (1) examining relationship; (2) length of treatment relationship and frequency of examination; (3)

23  supportability of opinion; (4) consistency with the record; (5) specialization; and (6) other factors

24  supporting or contradicting the opinion.  20 C.F.R. § 416.927 (c) and (f)(1).

25  ///

26  _____

    [8] The Social Security Administration has recently adopted new rules applicable to claims filed after March 27, 2017,
27  which expand the category of acceptable medical providers to include, among others, nurse practitioners.  20 C.F.R.
    §§ 404.1502(a)(6), (7), (8); 416.902(a)(6), (7), (8) (2017); Revisions to Rules Regarding the Evaluation of Medical
28  Evidence, 82 Fed. Reg. 5844 (Jan. 18, 2017).  The revisions do not apply to Plaintiff's claim, which was filed August
    3, 2015.

1

2

**B.  Medical Opinions**

**1.  Agency Physicians**

In October 2015 on initial review, psychiatrist Herbert Ochitill, M.D., identified Plaintiff as having serious impairments consisting of affective disorders; anxiety disorders; schizophrenic, paranoid and other functional psychotic disorders; and, substance addiction disorders.  AR 71. None of Plaintiff's impairments satisfied a potentially applicable listing.  AR 72.  Dr. Ochitill opined that Plaintiff had sustained concentration and persistence limitations; moderate limitations in completing a workday and work week without interruptions from psychologically based symptoms; and, moderate limitations in interacting with the general public, and in accepting instructions and responding appropriately to criticism from supervisors.  AR 73-75.  Despite these limitations, however, Plaintiff was not disabled.  AR 78.

On reconsideration in March 2016, psychologist Anna M. Franco, Psy.D., found no change in Plaintiff's condition since initial review.  AR 84.  Accordingly, Dr. Franco adopted Dr. Ochitill's determination.  AR 85-86.

**2.  Consultative Internal Medicine Report**

In August 2017, internist Steven Stoltz, M.D., conducted an internal medicine examination of Plaintiff.  AR 588-99.  In addition to psychiatric issues, Plaintiff reported low back pain and hepatitis C.  AR 588.  He had been diagnosed with a compression fracture of L1 but received no treatment.[9]  AR 588.  Plaintiff's examination was generally within normal limits. AR 590-92.

Dr. Stoltz opined that Plaintiff could sit, stand and walk for four hours at a time and for a total of eight hours in an eight-hour workday.  AR 593.  He could lift 100 pounds occasionally and 20 pounds frequently.  AR 593.  Plaintiff had no postural, manipulative, visual, communicative or environmental limitations.  AR 593.

///

///

---

[9] Prison medical records indicate that Plaintiff experienced back pain due to an injury incurred when Plaintiff was kicked.  AR 741.

### 3.    Consultative Psychiatric Report

Psychiatrist Ekram Michiel, M.D., completed a consultative psychiatric report in September 2017.  AR 620-26.  Plaintiff complained of depression, anxiety, anger and auditory and visual hallucinations.  AR 623, 624.  As a child he had a troubled school experience: He was unable to focus, failed to complete homework, and was always fighting and in trouble.  AR 623.  After leaving school he worked in his father's roofing business.  Plaintiff became depressed in 1996 when his brother took over the family roofing company following their father's death and refused to let Plaintiff work when his ongoing drug abuse made him drowsy and unfocused.  AR 623.

Dr. Michiel observed signs of anxiety and shakiness.  AR 625.  Plaintiff was sometimes silent "as if he were listening to internal stimuli."  AR 625.  Testing revealed poor attention, concentration, and immediate and long-term recall.  AR 625-26.  Dr. Michiel diagnosed attention deficit hyperactivity (predominant inattentive, adult type) and psychotic disorder not otherwise specified.  AR 626.  He estimated Plaintiff's GAF score to be 48.  AR 626.

In his narrative opinion, Dr. Michiel opined that Plaintiff was unable to maintain attention and concentration to carry out simple job instructions.  AR 626.  In an attached medical source statement, however, the doctor opined that Plaintiff had mild restrictions in carrying out simple instructions.  AR 620.  The source statement also indicated that Plaintiff had marked limitations in understanding, remembering and carrying out complex instructions; making judgments on complex work-related decisions; and, responding appropriately to usual work situations and to changes in a routine work setting.  AR 620-21.  He had moderate limitations in making judgments on simple work-related decisions and interacting appropriately with supervisors and co-workers.  AR 620-21.

### C.  Analyzing a Claimant's Residual Functional Capacity

"[A]n ALJ is responsible for determining credibility and resolving conflicts in medical testimony."  *Magallanes*, 881 F.2d at 750.  He or she properly determines the weight to be given each medical opinion by considering the evidence in the record.  20 C.F.R. § 416.927(c)(4) ("the more consistent an opinion is with the record as a whole, the more weight we will give to that

1  opinion").  The record must include objective evidence to support the medical opinion of the

2  claimant's residual functional capacity.  *Meanel*, 172 F.3d at 1113-14.

3       As set forth above, "[t]his court may set aside the Commissioner's denial of disability

4  insurance benefits when the ALJ's findings  . . .  are not supported by substantial evidence in the

5  record as a whole."  *Tackett*, 180 F.3d at 1097.  In making this determination, a court must

6  "consider the entire record as a whole and may not affirm simply by isolating a specific quantum

7  of supporting evidence."  *Robbins*, 466 F.3d at 882.  Whether or not the ALJ intended to support

8  her decision by selecting only portions of the evidence to support a conclusion that Plaintiff was

9  not disabled, a review of the hearing decision reveals that the ALJ did not support the decision

10  with evidence in the record as a whole but selected only portions of the evidence tending to

11  support a denial of benefits.  In addition, despite the absence of a treating physician's opinion,

12  likely reflecting Plaintiff's dependence on treatment by prison and county mental health

13  providers, the hearing decision reflects cursory consideration of the consultative psychiatric

14  evaluation and overlooks the contradiction concerning Plaintiff's ability to work set forth in it.

15       **D.      The ALJ's Rejection of Expert Medical Opinion**

16       As stated above, non-examining agency professionals Herbert Ochitill, M.D., and Anna

17  M. Franco, Psy.D., agreed that Plaintiff had sustained concentration and persistence limitations;

18  moderate limitations in completing a workday and work week without interruptions from

19  psychologically based symptoms; and, moderate limitations in interacting with the general public,

20  and in accepting instructions and responding appropriately to criticism from supervisors.

21  Finding that later evidence from Fresno County Mental Health supported greater limitations,

22  however, the ALJ gave little weight to their opinion  AR 30.

23       Having rejected the non-examining physician's opinion as insufficiently restrictive, the

24  ALJ  gave little weight to Dr. Michiel's opinion because it was excessively restrictive:

25           Consultative psychiatrist Ekram Michiel, M.D., saw the claimant in
             September 2017.  The claimant presented with complaints of
26           depression, auditory hallucinations, anxiety, and anger.  He said he
             had difficulty completing tasks, paying attention, and he was
27           forgetful.  The doctor noted that claimant's mood was scared and sad,
             his attention and concentration were poor, and he was oriented times
28           two.  The claimant was diagnosed with attention deficit hyperactivity

                                      12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

with predominant inattentive, adult type; and psychotic disorder, not otherwise specified.  Dr. Michiel estimated the claimant's GAF was 48 . . . The doctor concluded the claimant was unable to maintain attention and concentration to carry out simple job instructions.  He was able to handle his own funds if his history regarding not using drugs for four years was reliable.

Dr. Michiel conducted a detailed medical evaluation of the claimant.  Little weight has been accorded his opinion because other evidence shows the claimant is not as limited as determined by the doctor.  It appears the claimant exaggerated his abilities [*sic*] during the examination.

AR 30.

The ALJ never articulated what other evidence established that Plaintiff was not as limited as Dr. Michiel opined.  Nor does she provide any evidentiary basis for her conclusion  that Plaintiff "exaggerated his abilities [*sic*] during the examination."  No such evidence is readily apparent in the Court's review of Dr. Michiel's report independently or in comparison with the record as a whole. In short, the ALJ rejected all the expert opinions of record in favor of her own assessment of Plaintiff's ability to work.

An ALJ may not act as her own medical expert as she is "simply not qualified to interpret raw medical data in functional terms."  *Nguyen v. Chater*, 172 F.3d 31, 35 (1ˢᵗ Cir. 1999).  Decisions addressing this issue frequently speak of an ALJ's "play[ing] doctor and making [her] own independent medical findings." *See, e.g., Banks v. Barnhart*, 434 F.Supp.2d 800, 805 (C.D. Cal. 2006).  In this case, no medical or psychological opinion supported the ALJ's conclusion that Plaintiff was able to perform a full range of work at all exertional levels so long as his interpersonal contact was limited.  Further, the residual functional capacity determination failed to consider Plaintiff's impairments of attention, concentration and persistence, and inability to complete workdays and work weeks without interruptions from psychological symptoms, despite recognizing those deficits elsewhere in the opinion.

In addition to the lack of support for the residual functional capacity determination, the ALJ's evaluation of Dr. Michiel's opinion evinces both an incomplete review of the opinion as a whole and lack of understanding of its meaning.  For example, the hearing decision recites Dr. Michiel's finding that Plaintiff was "oriented times two," seemingly without recognizing this term

1   of art as an indication of a neurologic deficit. A mental status exam evaluates whether an

2   individual is "oriented times three," that is oriented in person (what is your name?); time (what is

3   the date?); and place (what is the name of this place?).

4   merckmanuals.com/professional/neurologic disorders/neurologic-examination/how-to-assess-

5   mental-status (accessed May 11, 2020).  Thus, a person such as Plaintiff who is oriented "times

6   two"  is not fully oriented.  The ALJ also failed to recognize the inconsistency between the

7   functional assessment set forth in the narrative opinion and the assessment in the medical source

8   statement.  Whether or not a claimant is represented by counsel, the ALJ "must inform himself

9   about the facts relevant to his decision."  *Heckler v. Campbell*, 461 U.S. 458, 471 n. 1 (1983).

10  Because the ALJ in this case failed to acknowledge and resolve the apparent inconsistency

11  between Dr. Michiel's narrative report (Plaintiff was unable to maintain attention and

12  concentration to carry out simple job instructions) and the medical source statement (Plaintiff had

13  mild restrictions in carrying out simple instructions), she cannot be said to have fully reviewed

14  Dr. Michiel's expert opinion.

15  **E.       The Selective Analysis of Other Medical Evidence in the Record**

16          The ALJ began her analysis of the remaining medical evidence with a detailed summary

17  of Plaintiff's February 2015 mental health treatment plan.  AR 28-29.  The hearing decision

18  provided no explanation for its omission of earlier medical treatment records, including Plaintiff's

19  crisis placement at the California Health Care Facility in December 2014.

20          In the next paragraph, the ALJ provided a detailed summary of the one-page "SOAP note"

21  of Plaintiff's August 2015 encounter with his EOP social worker.  AR 29.  The hearing decision

22  neither explains why the factual analysis skipped the medical records for the six months since the

23  February treatment plan, nor explains *why* or *if*  this particular encounter note constituted a

24  sufficient basis for conclusions concerning Plaintiff's residual functional capacity.

25          The third paragraph of the analysis addresses Plaintiff's mental health treatment during

26  parole, focusing on segments of a continuous computer record of encounter notes prepared by

27  various parole department personnel.  AR 29.  The full record of encounter notes appears within

28  the record at AR 563-74, 627-65.  Drawing from assorted pages within the notes, the hearing

14

1    decision reported that in various encounters Plaintiff denied depression; reported difficulty falling

2    asleep; felt motivated; was abstaining from methamphetamine and alcohol; twice felt anxious;

3    had panic attacks; had difficulty focusing; and, experienced difficulty in crowded places.  AR 29.

4    The fifth and sixth paragraphs recount in detail the general assistance form completed by

5    Ms. Smith (AR 600-01) and reject her opinion as one reserved to the Commissioner.  AR 29.  .

6    Finally, the hearing decision includes a paragraph summarizing the November 10, 2016

7    Fresno County Mental Health intake assessment (AR 613-17) and subsequent treatment notes

8    (AR 603-12).  At intake, Plaintiff complained of anxiety, depression, trauma, hallucinations,

9    paranoia, eating and sleeping problems, hyperactivity, difficulty concentrating, aggressiveness

10   and delusions.  AR 29.  The hearing decision does not indicate that Plaintiff, seeking to continue

11   to receive medication management following his discharge from parole, was recounting the

12   history of his mental health problems and frequently spoke of them in the past tense.  *See* AR

13   613.  He sought only medication management, stating that he did not presently require individual

14   therapy.  AR 615.

15   The intake interview provided an "urgent medication referral," noting significant

16   impairment and "probability of significant deterioration" without medication services.  AR 617.

17   Areas of impairment included Plaintiff's living arrangement, social support, daily activities and

18   occupational [*sic*].  AR 617.

19                       **F.      Remand is Required for a Full and Fair Analysis**

20   Because the ALJ failed to consider the record in this case fully and fairly, the Court will

21   reverse the Commissioner's decision and remand this case to allow the Commissioner to resolve

22   the apparent inconsistency in Dr. Michiel's expert medical opinion, followed by analysis of

23   Plaintiff's residual functional capacity in compliance with applicable law and in consideration of

24   the record as a whole.

25         **VIII.   Reliability of Plaintiff's Testimony**

26   Plaintiff contends that the ALJ erred in rejecting as unreliable Plaintiff's testimony of his

27   psychological impairments.  The Commissioner responds that the ALJ appropriately concluded

28   ///

1  that Plaintiff's subjective testimony of the effects of his mental health impairments was not

2  always consistent with the objective medical records.

3      An ALJ is responsible for determining credibility, resolving conflicts in medical

4  testimony and resolving ambiguities. *Andrews*, 53 F.3d at 1039.  His or her findings of fact must

5  be supported by "clear and convincing evidence." *Burrell v. Colvin*, 775 F.3d 1133, 1136-37 (9th

6  Cir. 2014).  A claimant's statements of pain or other symptoms are not conclusive evidence of a

7  physical or mental impairment or disability.  42 U.S.C. § 423(d)(5)(A); Soc. Sec. Rul. 16-3p.

8  "An ALJ cannot be required to believe every allegation of [disability], or else disability benefits

9  would be available for the asking, a result plainly contrary to the [Social Security Act]." *Fair v.*

10  *Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

11      To determine whether the ALJ's findings are supported by sufficient evidence a court

12  must consider the record as a whole, weighing both the evidence that supports the ALJ's

13  determination and the evidence against it. *Magallanes*, 881 F.2d at 750.  "[A] federal court's

14  review of Social Security determinations is quite limited." *Brown-Hunter v. Colvin*, 806 F.3d

15  487, 492 (9th Cir. 2015).  "For highly fact-intensive individualized determinations like a

16  claimant's entitlement to disability benefits, Congress places a premium upon agency expertise,

17  and, for the sake of uniformity, it is usually better to minimize the opportunity for reviewing

18  courts to substitute their discretion for that of the agency." *Id.* (quoting *Treichler v. Comm'r of*

19  *Soc. Sec. Admin.*, 775 F.3d 1090, 1098 (9th Cir. 2014), quoting *Consolo v. Fed. Mar. Comm'n*,

20  383 U.S. 607, 621 (1966)) (internal quotation marks omitted).  Federal courts should generally

21  "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve

22  ambiguities in the record.'" *Brown-Hunter*, 806 F.3d at 492 (quoting *Treichler*, 775 F.3d at

23  1098).  In this case, the ALJ relied on inconsistencies between the testimony and objective

24  evidence, including Plaintiff's ability to attend his grandson's football games and church, to

25  conclude that Plaintiff retained the ability "to function adequately and to perform many basic

26  activities associated with work." AR 31.

27      Social Security Ruling 16-3p applies to disability applications heard by the agency on or

28  after March 28, 2016.  Ruling 16-3p eliminated the use of the term "credibility" to emphasize that

1  subjective symptom evaluation is not "an examination of an individual's character" but an

2  endeavor to "determine how symptoms limit ability to perform work-related activities."  S.S.R.

3  16-3p at 1-2.

4       An ALJ performs a two-step analysis to determine whether a claimant's testimony

5  regarding subjective pain or symptoms is credible.  *See Garrison v. Colvin*, 759 F.3d 995, 1014

6  (9th Cir. 2014); *Smolen*, 80 F.3d at 1281; S.S.R 16-3p at 3.  First, the claimant must produce

7  objective medical evidence of an impairment that could reasonably be expected to produce some

8  degree of the symptom or pain alleged.  *Garrison*, 759 F.3d at 1014; *Smolen*, 80 F.3d at

9  1281-1282.  In this case, the first step is satisfied by the ALJ's finding that Plaintiff's "medically

10  determinable impairments could reasonably be expected to produce the alleged symptoms."  AR

11  31.  The ALJ did not find Plaintiff to be malingering.

12      If the claimant satisfies the first step and there is no evidence of malingering, the ALJ

13  must "evaluate the intensity and persistence of [the claimant's] symptoms to determine the extent

14  to which the symptoms limit an individual's ability to perform work-related activities."  S.S.R.

15  16-3p at 2.  "[S]ome individuals may experience symptoms differently and may be limited by

16  symptoms to a greater or lesser extent than other individuals with the same medical impairments,

17  the same objective medical evidence and the same non-medical evidence."  S.S.R. 16-3p at 5.  In

18  reaching a conclusion, the ALJ must examine the record as a whole, including objective medical

19  evidence; the claimant's representations of the intensity, persistence and limiting effects of his

20  symptoms; statements and other information from medical providers and other third parties; and,

21  any other relevant evidence included in the individual's administrative record.  S.S.R. 16-3p at 5.

22  "The determination or decision must contain specific reasons for the weight given to the

23  individual's symptoms, be consistent with and supported by the evidence, and be clearly

24  articulated so the individual and any subsequent reviewer can assess how the adjudicator

25  evaluated the individual's symptoms."  S.S.R. 16-3p at *10.

26      Because a "claimant's subjective statements may tell of greater limitations than can

27  medical evidence alone," an "ALJ may not reject the claimant's statements regarding her

28  limitations merely because they are not supported by objective evidence."  *Tonapetyan v. Halter*,

1  242 F.3d 1144, 1147-48 (2001) (quoting *Fair*, 885 F.2d at 602).  *See also Bunnell v. Sullivan*, 947

2  F.2d 341, 345 (9th Cir. 1991) (holding that when there is evidence of an underlying medical

3  impairment, the ALJ may not discredit the claimant's testimony regarding the severity of his

4  symptoms solely because they are unsupported by medical evidence).

5        The law does not require an ALJ simply to ignore inconsistencies between objective

6  medical evidence and a claimant's testimony.  "While subjective pain testimony cannot be

7  rejected on the sole ground that it is not fully corroborated by objective medical evidence, the

8  medical evidence is still a relevant factor in determining the severity of claimant's pain and its

9  disabling effects."  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); SSR 16-3p (citing 20

10  C.F.R. § 404.1529(c)(2)).  As part of his or her analysis of the record as a whole, an ALJ properly

11  considers whether the objective medical evidence supports or is consistent with a claimant's

12  testimony.  *Id.*; 20 C.F.R. §§ 416.929(c)(4), 416.929(c)(4) (symptoms are determined to diminish

13  residual functional capacity only to the extent that the alleged functional limitations and

14  restrictions "can reasonably be accepted as consistent with the objective medical evidence and

15  other evidence").  "[O]bjective medical evidence is a useful indicator to help make reasonable

16  conclusions about the intensity and persistence of symptoms, including the effects those

17  symptoms may have on the ability to perform work-related activities."  S.S.R. 16-3p at 6.

18  Because objective medical evidence may reveal the intensity, persistence and limiting effects of a

19  claimant's symptoms, an ALJ must consider whether the symptoms reported by a claimant are

20  consistent with medical signs and laboratory findings of record.  *Id.*

21        In this case, the ALJ began her analysis by considering Plaintiff's testimony that he

22  suffered daily auditory and visual hallucinations, became anxious in crowds, was unable to shop

23  and had difficulty concentrating.  AR 31.  She wrote:

24          The claimant has a poor work history, and has not been employed for
over twenty years, which suggest his current unemployment may not

25          be due to any disability.  Although he testifies that his medication
does not help,  the record shows he has reported otherwise to medical

26          personnel.  Furthermore, medical notations state that he was stable

27  ///

28  ///

1

2             on medication.  The claimant has reported anxiety in crowds, yet he

3             is able to attend his grandson's football games, as well as church.
           His allegations are inconsistent with the evidence.

4             AR 31.

5         As is generally the case in disability appeals, the record in this case includes an abundance

6  of evidence, some of it contradictory, to support either side of a credibility determination.  In

7  analyzing the reliability of Plaintiff's testimony the ALJ accurately identified  Plaintiff's long

8  period of unemployment and various evidence supporting a conclusion that Plaintiff experienced

9  improvement from his medications.  She omitted evidence of instances when Plaintiff's

10  medications were less effective.  And, Plaintiff correctly points out that the record included no

11  evidence supporting the ALJ's findings that Plaintiff attended church and his grandson's football

12  games.  The sole testimony concerning Plaintiff's then-thirteen-year-old grandson was that the

13  child played football but that the football season was then over.  AR 44-45.  Plaintiff did not

14  testify that he attended games and nothing in the record considers whether middle school football

15  games draw crowds.  Although the record establishes that Plaintiff identified himself as Christian,

16  he did not testify that he attended church.  To the contrary, Plaintiff testified that he participated

17  in no social activity such as church, groups, friends or family.  AR 44.

18         Even if the Court were to disregard the ALJ's reliance on football games and church

19  attendance, however, the objective evidence does not suggest that Plaintiff was unable to function

20  outside of complete isolation.  At VSP he was able to live in a six-person cell and attend various

21  group educational and therapy sessions suggested by EOP personnel.  Treatment notes during and

22  after parole reported Plaintiff's progress at developing strategies for dealing with the anxiety

23  generated by life with three grandchildren.  However, the hearing decision does not consider this

24  evidence.

25         Had the balance of the hearing decision been unremarkable the Court might have

26  concluded that the ALJ's errors in determining Plaintiff's credibility were harmless.  However,

27  since the multiple errors in the residual functional capacity analysis require remand in any event,

28  the Court directs the analysis on remand to analyze more carefully the reliability of Plaintiff's

testimony accurately focusing on the areas of consistency and inconsistency between Plaintiff's testimony and the record as a whole.

### IX.     Vocational Expert Testimony

Finally, Plaintiff contends that (1) because the ALJ's hypothetical questions did not accurately reflect Plaintiff's residual functional capacity, the ALJ erred in relying on the vocational expert's testimony to conclude that jobs that Plaintiff could perform were available in the national economy; and, (2) in the alternative, the ALJ erred in failing to identify a conflict between the DOT and the VE's testimony.  Because this decision reverses the residual functional capacity determination and remands this case for further proceedings, the Commissioner will be required to consider anew whether Plaintiff is disabled in light of the residual functional capacity determined on remand.  Accordingly, the Court declines to address this issue

### X.     Conclusion and Order

Based on the foregoing, the Court finds that the ALJ's decision that Plaintiff is not disabled is not supported by substantial evidence in the record as a whole and is not based on proper legal standards.  Accordingly, this Court REMANDS this case to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of Court is directed to enter judgment in favor of Plaintiff Shawn Paul Smith, and against Defendant Andrew Saul, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **May 21, 2020**                    **/s/ Gary S. Austin**
                                          UNITED STATES MAGISTRATE JUDGE